STEVEN G. KALAR
Federal Public Defender
ELIZABETH FALK
Assistant Federal Public Defender
GALIA AMRAM PHILLIPS
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Elizabeth_Falk@fd.org
Galia_Phillips@fd.org

Counsel for Defendant BARRY HOUSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>BARRY HOUSE,<br><br>              Defendant. | No. 14-CR-196-CRB (NC)<br><br>**BRIEF IN SUPPORT OF PRETRIAL RELEASE**<br><br>Date: September 3, 2014<br>Time: 11:00 am<br>Judge: Honorable Nathanael Cousins |

## I.     INTRODUCTION

Barry House asks this Court to grant him pre-trial release as his Alameda County hold has now been lifted. As explained below, and shown in the exhibits attached to the accompanying declaration, Mr. House has a history of performing very well on supervision, and has two strong sureties. If the Court releases him, his plan is to be the full-time caregiver for his

two young sons – one of whom, five-year old B▓▓▓, has leukemia, requires chemo every day, and surgery every three weeks.

## II.     FACTS

### A.     Mr. House's Background

Mr. House is a forty-three year old man born in the Bronx, NY as the youngest of seven children. His father moved to Trinidad before Mr. House was born and Mr. House considered his stepfather, William House, to be his father. When Mr. House was eleven years old, his mother died of cancer. Two years later, his stepfather also died of cancer. Mr. House was subsequently raised by his sister, Eolia, who was in her early 20s when Mr. House's mother passed. When Mr. House was twenty-seven years old, he moved to the Bay Area for work, where he has lived ever since.

### B.     Mr. House's Family

Mr. House has a long time partner, Ella Bell, with whom he has two children, B▓▓▓ (5) and B▓▓▓▓▓ (3). Mr. House and Ms. Bell met over eight years ago through their church. Ms. Bell works two jobs as a social worker at Catholic Charities and the Institute for Aging.[1]

B▓▓▓ House, now five years old, was born with Trisonomy 21. As an infant, he had extremely serious heart problems that required two open heart surgeries. A little over one year ago, B▓▓▓ was diagnosed with leukemia. The leukemia is very serious; dangerous complications have occurred including fungal meningitis, and B▓▓▓ has had to have multiple surgeries since the leukemia diagnosis. In addition, B▓▓▓ has a central line in place to deliver chemotherapy. Declaration of Galia Phillips In Support of Brief In Support of Pretrial Release ("Phillips Decl."), Exh. A [letter from Kaiser.] Though the family's health insurance is through

---

[1] Mr. House also has a fifteen year old son, M▓▓▓ House, from a prior relationship with Janelle Hones. M▓▓▓ attends high school in San Ramon and Mr. House has a good relationship with him.

*HOUSE*, CR 14-196 CRB
BRIEF IN SUPPORT OF PRETRIAL RELEASE           2

Kaiser, B▮ is sometimes treated at UCSF when Kaiser is not equipped to handle the seriousness and complexity of his illness.

After B▮ was born, Mr. House and Ms. Bell formed a charity to support low-income families with children suffering from heart disease. The foundation, Build My Heart, is an invaluable source for families in need.[2] The Vice-President of Build My Heart, Natasha Griffith, had the following to say about Mr. House:

> I have been fortunate to work alongside Mr. House as he volunteered with families during their child's hospitalization. I have seen Barry and Ella pay out of pocket for gas cards and gift cards [f]or families in need. Barry was not only the father of a child with heart disease, but when Ella was pregnant with their second child they learned that he would only have one kidney and may need kidney surgery when he gets older. A shock to them both, they kept helping families. The worst news of all was when their first born was diagnosed with cancer in 2013 and although very devastating, Barry and Ella hosted their annual heart fundraiser for families in need. They decided that giving back and supporting others gave them strength. I would watch Barry and Ella take calls from families in need, leave their child's bedside and take care packages to other families. To say the least it is with an open heart that Barry helps others. His presence may appear intimidating to most but he is a gentle man with a huge heart.

Phillips Decl., Exh. F [letter from Vice-President of Build My Heart Foundation].

In addition, the pastor of the Mr. House's church, Dr. S.J. Thorner, wrote a letter to this Court in support of Mr. House's request for bail describing him as a "terrific father." She notes that she has known Mr. House "for about 10 years now and have had the opportunity to see him display kindness, charity and most recently in his confession and expression of faith." Phillips Decl., Exh. G [letter from Pastor].

### C.  Mr. House's Performance Under Supervision

At the time of his arrest on this case, Mr. House was on probation for two Alameda County cases: a misdemeanor domestic violence case, and a possession with intent to distribute marijuana case. Mr. House's performance under supervision for both cases was exemplary. He received the highest possible marks from his domestic violence counselor, and had steadfastly

---

[2] *See* buildmyheart.org.

completed 43 of the required 52 classes before his arrest on the above-captioned case.  Phillips Decl., Exh. B (DV Treatment Report).  Mr. House's felony probation officer stated that Mr. House was "compliant in reporting regularly and in paying toward his fines and fees."  Phillips Decl., Exh. C at 4 [Report of Alameda County Probation Officer.]  The probation officer recommended that Mr. House be released on his own recognize by the Alameda County Superior Court for the alleged probation violation of having been arrested on the above-captioned case, and noted that he hoped his probation report would "work in getting Mr. House released from custody [on the above-captioned case] so he can return to work, attending DV classes, and following the federal matter."  Phillips Decl., Exh. C at 1.  In fact, the Alameda County judges overseeing Mr. House's two cases have both released him on his own recognizance.

### D.  Mr. House's Sureties and Plan If Released on Bond[3]

Mr. House has two potential sureties:  Ella Bell and Rob Carroll.  As explained above, Ms. Bell works two jobs, but she does not own any property.  Mr. Carroll is a partner at Nixon Peabody.  He is the leader of the firm's Global Beverage Alcohol team and a member of the Labor & Employment Group; he has been a member of the bar since 1978.   Mr. Carroll and Mr. House met in about 1993 because they shared the same client, a basketball player.  Over the last twenty years, Mr. House and Mr. Carroll have shared a number of clients together and Mr. Carroll became a mentor and father figure to Mr. House.[4]

If released on bond, Mr. House's plan is to be the primary caretaker for B▮▮▮ and B▮▮▮▮.  Before Mr. House was taken into custody on the above-captioned case, Ms. Bell worked part time – which allowed her to care for B▮▮▮.  Because of Mr. House's arrest, she has had to take on a second job and now has one full time job and one part time job.  She and her mother alternate taking time off of work to care for B▮▮▮ and B▮▮▮▮▮.  B▮▮▮ has to have chemotherapy every day.  He also has to have surgery every three weeks for an infection in his

---

[3] Mr. Carroll and Ms. Bell will be present at the detention hearing and can verify the information in this section.

[4] Mr. Carroll will sign an unsecured bond.  He is willing but unable to sign a secured bond as he went through a divorce in which his wife got the home, and he has two kids in college.

HOUSE, CR 14-196 CRB
BRIEF IN SUPPORT OF PRETRIAL RELEASE          4

spine. The surgery requires both general anesthesia and intubation. If Mr. House is released from custody, he will be able to be the full-time caretaker for B███ and B███. In the evenings, Mr. House intends to work on continuing his education and finding employment that allows him to continue to care for his sons.

Finally, it should be noted that Mr. House does not have a history of either drug addiction or mental health issues.

### III.     ARGUMENT

#### A.     LEGAL STANDARD

The Court is surely very familiar with 18 U.S.C. § 3142. As Mr. House is charged with two counts of 18 U.S.C. §922(g)(1) and one count of 18 U.S.C. §922(a)(1), this is not a case with a rebuttable presumption of detention. 18 U.S.C. §3142(e)(3). The government bears the burden of showing dangerousness by clear and convincing evidence and the burden of showing risk of flight by a preponderance of the evidence.[5] 18 U.S.C. § 3142(f)(2)(B); *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991).

If the Court does impose conditions of release, 18 U.S.C. § 3142(c)(2) mandates the Court not impose a financial condition that results in pretrial detention. A related principle is the well-known decree that Courts should impose financial conditions only after all other non-financial conditions have been found inadequate. *United States v. Bronson*, 433 F.2d 537, 539 (D.C. Cir. 1970). In addition, facilitating the government's ability to collect on security is not a proper concern for a court setting release conditions. *United States v. Frazier,* 772 F.2d 1451 (9th Cir. 1985). The Eleventh Circuit has criticized the routine practice of requiring real

---

[5] Mr. House also notes that the provision that conditions "reasonably assure" appearance and safety does not require a guarantee of appearance and safety, but rather an "objectively reasonable" assurance of community safety and the defendant's appearance at trial." *See United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990). Any conditions of release set designed to protect the community must be justified by an individualized showing that Mr. House "poses a heightened risk of misbehaving,": the government may not rely on the fact of arrest alone of a generalized law enforcement interest. *See United States v. Scott,* 450 F.3d 863, 874 (9th Cir. 2006) (warrantless search and drug testing were invalid).

1 property to secure bonds as being in conflict with the admonition in 18 U.S.C. § 3142(c) to
2 impose the lease restrictive conditions of release. *United States v. Price,* 773 F.2d 1526 (11th
3 Cir. 1985).

4     The government must specify the grounds upon which it will rely in seeking detention.
5 Fed. R. Crim. P. 47.

### (i)     Mr. House Is Not A Danger To The Community

8     If the government alleges that Mr. House is a danger to the community, the danger it
9 claims he poses must relate to the federal case: unrelated allegations of danger to others is
10 insufficient to justify an order of detention." *United States v. Ploof,* 851 F.2d 7,11 (1st Cir.
11 1988). Moreover, dangerousness must be decided on the basis of information available at the
12 bail hearing. *United States v. Martin-Trigona,* 767 F.2d 35 (2d Cir. 1985).

13     Here, the government will not be able to show by clear and convincing evidence that Mr.
14 House will be a danger if released. First, Mr. House is charged with possession of a firearm by a
15 felon and selling a firearm without a license – neither charge carries a presumption of detention.
16 *Cf. United States v. Dumot*, 634 F.Supp. 407, 408 (W.D.Pa. 1986) (danger found where there
17 was evidence that defendant was dealing in increasingly larger quantities of narcotics before his
18 arrest and court concerned defendant would resume drug dealing if released). That being said,
19 no one ever actually saw Mr. House with a weapon. The firearms at issue were provided to the
20 undercover agent by Keith Jackson who claimed to have obtained them from Mr. House.
21 Phillips Decl., Exh. D (FBI 302, 04.03.14 [US 609559]). Moreover, no weapons, nor contraband
22 of any kind, were found in Mr. House's home. Phillips Decl., Exh. E (FBI 302, 04/04/14 [US
23 609620-21]). In fact the only item taken from the search of Mr. House's home was his cell
24 phone. Ibid. *Cf. United States v Gatto*, 727 F Supp 903 (D. NJ. 1989) (detention of RICO
25 defendant warranted where evidence was clear and convincing that defendant has been heavily
26 armed, implicated in violent crimes, and previously convicted of bribing witness.)

### (ii) Mr. House Is Not A Flight Risk

If the government alleges that Mr. House is a flight risk, the statute requires that Mr. House be detained only if he represents a *serious* risk of flight. That is a substantial burden for the government to meet. *See United States v. Giordana,* 370 F.Supp.2d 1256 (S.D.Fla. 2005). The government cannot meet that burden in this case.

Mr. House has substantial ties to the community. He has lived in the United States for his whole life, and the Bay Area for much of his adult life. *See United States v. Hanson*, 613 F.Supp.2d 85 (D.D.C. 2009) (defendant released subject to home confinement and electronic monitoring, despite claims that, although a naturalized United States citizen, she actually had closer ties and greater affinity with China, where she had business interests, family ties and property). Mr. House's partner is here and his children are here. *See United States. v. Say,* 233 F.Supp.2d 221, 226 (D. Ma. 2002) (Defendant charged with possession of stolen firearms and conspiracy to possess stolen firearms did not pose risk of flight because defendant's family lived in community, and surrender of his passport precluded flight to Vietnam, where he had relatives).

Mr. House also does not have the resources to flee even if he were so inclined. *United States v. Gilkeson*, 431 F.Supp.2d 270, 296 (N.D. N.Y. 2006) (risk of flight found where defendant's liquid assets provided sufficient funding for flight); *United States v. Botero*, 604 F.Supp. 1028, 1030, 1034-35, aff'd 853 F.2d 928 (S.D. Fla. 1985) (court found risk of flight where defendant was Columbian citizen who attempted to avoid prosecution for three years by failing to return to United States and had considerable means and foreign connections which would make it possible for him to escape to other countries with relative ease).[6]

---

[6] *See also United States v. Jamal*, 326 F.Supp.2d 1006, 1009 (D. Ariz. 2003) (pretrial detention warranted where defendant had made plans and preparations to return to Lebanon, had declared willingness to abandon assets in United States and flee to Lebanon when faced with

But the most important factor showing that Mr. House is not a serious risk of flight is that he is a devoted father to an extremely ill child.  It is simply inconceivable that Mr. House would either 1) flee with his family and thus take his fragile, very ill son away from UCSF and, as well, lose the health insurance provided by his partner's job, or 2) abandon his ill son and flee alone.

### (iii)    The Case Against Mr. House Is Weak

Though Mr. House is charged with three offenses relating to firearms, none of the discovery provided so far indicates that anyone actually saw Mr. House with a firearm, and none were found at the search of his home.  *Cf.  United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding the "weight of the evidence" to be considerable where the government found a large cache of firearms and ammunition in searches of the defendant's residence and rented storage facility.)  Instead, co-defendant Keith Jackson provided the firearms to the undercover agent and claimed that he received them from Mr. House.  Phillips Decl., Exh. D.  *Cf. United States v. Cardenas*, No. CR 11-08312012, U.S. Dist. LEXIS 40981 (N.D. Cal. Mar. 26, 2012) (detaining on danger when the government had photographs of injuries caused by the defendant, text messages sent by the defendant to his step-daughter admitting his molestation of her, and a photograph of the victim's vagina taken by the defendant).  Mr. House has already made a request to the government that a defense expert examine the firearms at issue for fingerprints and DNA, but the government has yet to respond.  Phillips Decl., ¶7.  *See United States v Jones*, 583 F Supp 2d 513 (S.D. NY. 2008) (defendant released because records established that co-defendant was not present at scene of shooting, raising substantial questions concerning accuracy of eye-witness's testimony, and thus, weight of evidence overcame presumption of detention.)

---

prosecution); *United States v. Botero*, 604 F.Supp. 1028, 1030, 1034-35, *aff'd* 853 F.2d 928 (S.D.Fla. 1985) (court found risk of flight where defendant was Columbian citizen who attempted to avoid prosecution for three years by failing to return to United States and had considerable means and foreign connections which would make it possible for him to escape to other countries with relative ease).

## IV. CONCLUSION

Mr. House has shown this Court that he has a strong history of abiding by conditions of supervision and meeting the expectations of his probation officers. He has also shown that he has substantial ties to the community, and that his family situation and, in particular, his son's illness, are compelling reasons mitigating against any risk of flight. As a result, all of the factors in 18 U.S.C. § 3142 push in favor of his release.

Respectfully submitted,

Dated: September 2, 2014

GALIA AMRAM PHILLIPS
Assistant Federal Public Defender

Northern District of California