1  STEVEN G. KALAR
   Federal Public Defender
2  Northern District of California
   ELIZABETH M. FALK
3  Assistant Federal Public Defender
   19th Floor Federal Building - Box 36106
4  450 Golden Gate Avenue
   San Francisco, CA 94102
5  Telephone:   (415) 436-7700
   Facsimile:   (415) 436-7706
6  Email:       elizabeth_falk@fd.org

7

8  Counsel for Defendant HOUSE

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,            **Case No.:** CR 14-196 CRB

15                  Plaintiff,           **NOTICE OF MOTION AND MOTION**
                                         **FOR COMPASSIONATE RELEASE**
16         v.                            **PURSUANT TO 18 U.S.C. § 3582(c)(1)(A**

17  BARRY HOUSE,

18                  Defendant.

19

20

21  TO: DAVID L. ANDERSON, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF
    CALIFORNIA; AND WILLIAM FRENTZEN, ASSISTANT UNITED STATES ATTORNEY

22

23      PLEASE TAKE NOTE that on May 20, 2020 at 1:30 p.m., Defendant Barry House will move

24  this Court for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  This

    motion will be based on the following memorandum, all relevant statutory provisions, case law,
25
    administrative materials, and such argument as the Court will entertain at the hearing.  Given the
26
    time sensitive nature of this motion, Mr. House requests that the matter be heard by the Court on
27
    May 20, 2020, pursuant to the accompanying Unopposed Motion to Expedite Briefing and Hearing.
28

MOTION TO REDUCE SENTENCE
*HOUSE*, CR 14-196 CRB

## I.  INTRODUCTION

Defendant Barry House respectfully moves this Court pursuant to the First Step Act (FSA) for an order granting compassionate release and resentencing him to a time served sentence, followed by a three-year term of supervised release with an 8-month home confinement condition to replace the 4 months of custody and 4 months of home confinement/halfway house time that remains on his sentence.  Mr. House has already served over three quarters of his prison sentence (77.5%) for a § 922(g) violation in which he sold two guns (including relevant conduct rules) to the undercover agent in the *Chow* matter.  His projected statutory release date is February 10, 2021, and absent First Step Act consideration, his "normal" home confinement consideration date would be the last 10% of his sentence; September 18, 2020.  *See* Declaration of Elizabeth Falk ("Falk Decl.") at Exhibit C, p. D3. Given Mr. House's exemplary record with the BOP and the emphasis on release of low-risk offenders in the face of the pandemic, it is highly likely that the BOP will release Mr. House to home confinement anyhow in September.  By means of this motion, Mr. House thus realistically seeks a small modification of this Court's original sentence; the conversion of 4 months of actual prison time to home confinement in order to lessen the risk that he contracts COVID-19 given his current medical ailments and significant injury.

Mr. House is at risk of serious illness or death if he is infected by the coronavirus.  He is 50-years old and suffers from severe sleep apnea, high blood pressure, anemia, respiratory issues, obesity, hypertension, and heart problems.  These are all risk factors according to the Center for Disease Control (CDC).  Mr. House is currently (and somewhat inexplicably) housed at the Metropolitan Detention Center in Los Angeles, where the Bureau of Prisons (BOP) reports a staff member has already tested positive for coronavirus.  At nearby Terminal Island Prison in San Pedro, California, there are a surging number of cases – 620 inmates testing positive out of 1055.  *See* https://www.dailybreeze.com/2020/05/04/6th-inmate-with-coronavirus-dies-at-terminal-island-prison-in-san-pedro/ (last visited May 12, 2020).

As he promised the Court at sentencing, Mr. House has taken advantage of his time in custody to improve himself.  He has had no disciplinary reports.  *See* Falk Decl., Exhibit B.  Further, he has worked numerous jobs in the prison system, including maintenance positions painting cells

1

and repairing broken recreational prison facilities.  He has also worked as a barber in custody, and prior to transfer to MDC LA, earned over 20 certificates in educational and psychological programming.  *See* 4/15/2020 Declaration of Barry House, attached hereto as Exhibit 1.  If he were resentenced to time-served and released from custody with a home-confinement condition, Mr. House has a stable residence to return to in Pittsburgh, CA from which he could quarantine and shelter-in-place.  Once restrictions on employment are lifted and he can attend to his facial reconstruction (explained below), Mr. House has employment promised to him through Wrights Cuts in Pittsburgh, CA as a barber.  Although he was unable to maintain his marriage to his wife due to incarceration, his fiancé Shenell Jacobs is gainfully employed in the Pittsburgh school district and is able to provide for his basic needs during home confinement.  For all these reasons, Mr. House requests that the Court resentence him to time served followed by three years of supervised release, modified to include 8 months of home confinement.

**II.  JURISDICTION**

On December 21, 2018, the President signed the FSA into law.  Among the reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

Mr. House has exhausted his administrative remedies with BOP.  He submitted an administrative request to the warden MDC LA for compassionate release on April 15, 2020, which as of May 11, 2020 has gone unanswered.[1]  House Decl., Exhibit 1 at ¶ 2 (attached).  As a matter of law, Mr. House will therefore have exhausted his administrative remedies by the time of the May 20,

---

[1] It is extremely difficult to set up legal calls at MDC Los Angeles at the current time, particularly given Mr. House's current medical issues.  Counsel was able to set up a phone call for May 11, 2020 after submitting a written request a week prior by email.  During the May 11, 2020 call, Mr. House attested that his April 15, 2020 request (attached hereto as Exhibit 1), which he submitted to the Warden on April 15 2020, has gone unanswered.

2

2020 hearing, ("30 days after the receipt of [his] request by the warden of the defendant's facility.") *See* 18 U.S.C. § 3582(c)(1)(A).

## III. FACTUAL BACKGROUND

### A. Mr. House's risk factors put him at severe risk of death from coronavirus, and a recent traumatic injury during the pandemic will be unnecessarily hard to manage during the COVID-19 crisis.

On June 30, 2018, while in custody at FCI Sheridan, Mr. House was rushed to the Willamette Valley Medical Center ER by ambulance because he thought he was having a heart attack.  *See* Falk Decl., Exhibit A at D00360; D00215-217.  At the hospital, he was admitted and diagnosed with hypertension and arrhythmia.  *Id*. at D00363, D00365.  Because of his "strong family history of heart problems," and "hyperlipidemia" he was hospitalized overnight for observation.  Per BOP records, Mr. House is currently diagnosed with cardiac arrhythmia, and hypertension.  *Id*. at D00284.  He is also currently being treated at the BOP for irregular heart palpitations and heartbeat, as he recently had an irregular EKG.  *Id*. at D00091, D00031.

Mr. House has long suffered from high blood pressure.  He takes medications to control this and his high cholesterol.  *Id*. at D00298, 00299.  *Id*.  Because he has sleep apnea, he uses a CPAP machine while in custody.  *Id*. at 00284.  In BOP custody, Mr. House routinely takes Lisinopril and Hydrochlorothiazide to control his high blood pressure, Atorvastatin to control his high cholesterol, and aspirin and Carvedilol (betablocker) for his irregular PVCs (premature ventricular contractions).  *Id.* at D00129-132.  Under the CDC's Body Mass Index (BMI) guidelines, Mr. House is also considered obese with a BMI of 36.3.  *Id*. at D0046.[2]  As the Court is very likely aware, these are all serious risk factors for coronavirus according to the CDC (although the CDC defines " severe obesity" as a BMI of over 40).[3]

On May 1, 2020, Mr. House was "jumped" by a recent transfer inmate to MDC LA with

---

[2] See NIH, Calculate Your Body Mass Index, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (May 12, 2020).

[3] *See* CDC, Coronavirus Disease 2019 (COVID-19), Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (May 12, 2020).

severe mental health issues.  *See id*. at D0010-D0022.  Despite concerns about medical transit due to the ongoing pandemic, Mr. House's injuries to his left eye bone and nose were so severe and he required transportation to the White Memorial Hospital emergency room, where he remained until his discharge on May 5, 2020.  *Id*. at D0010.  He now requires urgent consultation with an oral facial surgeon and orbital surgeon as a result of this attack; he made his first consultation in the private sector on May 7, 2020.  *Id*. at D00017-19.  Mr. House now likely needs urgent surgery as a result of these multiple fractures to his eye and face, which is an extremely difficult situation to manage in the face of the COVID-19 pandemic even were Mr. House able to see doctors out of custody.  The surgeries cannot wait, however, thus prompting Mr. House's urgent motion to this Court.  *Id*.  The urgent traumatic facial injuries that will require extensive outpatient consultation and a likely surgery, coupled with Mr. House's COVID-19 risk factors overall are the basis of his request for this Court's resentencing.

**B.  The underlying case and the Court's original sentence.**

On January 8, 2018, Mr. House received a 48 month sentence from this Court as punishment for his sale of two firearms to UC-4599 for $1400 after being connected through co-defendant Keith Jackson.  *See* PSR, Docket 2049, at ¶ 70.  Unlike many of his co-defendants, Mr. House's illegal actions occurred at the very end of this protracted investigation; in February, 2014.  *Id*.  He was charged on April 4, 2014 for one count of violating 18 U.S.C. §922(a)(1), Dealing Firearms Without a License, and two counts of 18 U.S.C. § 922(g)(1), Felon-in-Possession.  *Id*. at ¶ 10.  Mr. House made his initial appearance on March 26, 2014, and spent over six months detained in pretrial custody.  *Id.*  After resolving probation issues in another county and posting a secured bond, Mr. House was released from custody on October 21, 2014 and remained out of custody on an ankle monitor for over three years until his self-surrender to the BOP in April, 2018.  *Id*.; *see also* Docket 2052, Order for Voluntary Surrender.

Mr. House entered an open guilty plea to one count of Felon-in-Possession (Count 9 of the Superseding Indictment) on April 26, 2017.  *Id*. at ¶ 8.  At sentencing, defense counsel filed a 28-page sentencing memorandum as well as a declaration with lengthy attachments

arguing that House had fully rehabilitated in the three years he had remained on pretrial release. *See* Docket 1947, 1957, 1969.  His sentencing package contained 15 letters of support from friends, family members and individuals who worked with Mr. House in the community.  *Id*. at Docket his 1969. This Court noted his level of community support as "unusual" and his path of rehabilitation post-arrest "remarkable" and "extraordinary."  *See* Transcript, Docket 1993 at 100-101.

Nothing in Mr. House's BOP records now detracts from this Court's initial view as to Mr. House's rehabilitation.  He has not incurred a single disciplinary infraction while in BOP custody.  Falk Decl., Exhibit B.  Moreover, Mr. House has earned over 20 certificates while at FCI Sheridan and has remained employed full-time while at the BOP in both maintenance and the Recreation departments, as an orderly and a barber.  *See* Exhibit 1, attached.

## IV.  ARGUMENT

### A.  "Extraordinary and compelling reasons" exist to resentence Mr. House to time served in order to save him from a risk of serious illness or death and to allow him to continue treatment for his shattered facial bones out of custody.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A), which states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

As relevant here, the examples of "extraordinary and compelling reasons" in U.S.S.G. § 1B1.13 include that Mr. House is, by virtue of his coronavirus risk factors, "suffering from a physical or medical condition" that "substantially diminishes the ability of [Mr. House] to provide self-care *within the environment of a correctional facility* and from which he or she is not able to recover." U.S.S.G. § 1B1.13, App. Note 1 (emphasis added).  Consistent with the standard, Mr. House cannot effectively provide self-care for himself at this moment at MDC LA.  His risk factors,

from which he cannot "recover," combined with coronavirus' spread into the MDC and the crowded custodial environment in his unit, which does not permit effective social-distancing or other preventative measures, constitute extraordinary and compelling reasons to resentence Mr. House to time served.

Numerous courts, including this one, have arrived at this conclusion and granted motions for compassionate release on very similar grounds. *United States v. Trent*, Case No. 16-CR-178 WHA, ECF No. 106 (N.D. Cal. Apr. 9, 2020) ("Confined to a small cell where social distancing is impossible, Trent cannot provide self-care because he cannot protect himself from the spread of a dangerous virus."); *United States v. Burrill*, No. 17-CR-00491 RS, ECF No. 308 (N.D. Cal. Apr. 10, 2020) (granting compassionate release on same grounds); *see also United States v. Rodriguez*, 03-CR-0271 AB, ECF No. 135 (E.D. Pa. Apr. 1, 2020) ("the outbreak of COVID-19 and underlying medical conditions that place [defendant] at a high risk should he contract the disease" justified release); *United States v. Zukerman*, No. 1:16-cr-194-AT, ECF No. 116 (S.D.N.Y. Apr. 3, 2020) ("[t]he severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic.").[4]

In addition, U.S.S.G. § 1B1.13, App. Note 1(D), provides a catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of BOP.  Because this policy statement was passed by the Sentencing Commission prior to the FSA (and the Sentencing Commission

---

[4] *See also United States v. Colvin*, No.19-cr-00179, 2020 WL 1613493 (D. Conn. Apr. 2, 2020); *United States v. Hernandez*, No. 18-cr-00834, 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020); *United States v. Resnick*, No. 14-cr-00810, 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020); *United States v. Edwards*, No. 17-cr-00003, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020); *United States v. Perez*, No. 17-cr-00513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020); *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020); *United States v. Gonzales*, No. 18-cr-00232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz*, No. 09-cr-00199, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16-cr-00078, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020).

remains without a quorum), the majority of courts have found that the sentencing court may assume the discretion exercised by the Director of BOP in determining whether such "other" "extraordinary and compelling reasons" to resentence the defendant in the absence of a new policy statement. *See, e.g.*, *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019) (stating that the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change").

In *United States v. Redd*, for example, the court explained that "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance." *United States v. Redd*, No. 97-CR-00006 AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) (citing cases).  Numerous other courts have agreed (including this Court) and held that the sentencing court may exercise its discretion to identify such "other" "extraordinary and compelling" reasons to resentence.  *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).[5]  Many of these decisions have been handed down in opinions granting compassionate release to inmates who have coronavirus risk factors like Mr. House.[6]

---

[5] *See also United States v. Brown*, 411 F. Supp. 3d 446, 450 (S.D. Iowa Oct. 8, 2019); *United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Ebbers*, --- F. Supp. 3d ----, 2020 WL 91399, at *4 & n. 6 (S.D.N.Y. Jan 8, 2020); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020); *United States v. O'Bryan*, 2020 WL 869475, at *2 (D. Kansas Feb. 21, 2020); *United States v. Young*, 2020 WL 1047815 at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Redd*, 2020 WL 1248493, at * 7 (E.D. Va. Mar. 16, 2020); *United States v. Owens*, 97 CR-2546, ECF No. 93 at *4 (S.D. Cal. Mar. 23, 2020); *United States v. Decator*, 2020 WL 1676219, at *2-3 (D. Md. Apr. 6, 2020).

[6] *See, e.g., United States v. Rodriguez*, No. 03-CR-00271-AB, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *United States v. Kataev*, 16 Cr. 763-05, 2020 WL 1862685, at *2 (S.D.N.Y. Apr. 14, 2020); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020); *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020).

7

1    Thus, Mr. House submits that this additional ground provides a basis for granting the motion.

2    Specifically, the extraordinary public health crisis created by the coronavirus, the impossibility of

3    maintaining social distancing at MDC LA, the fact that the virus has already entered the prison, and

4    finally, Mr. House's own personal vulnerability to the disease due to his heart arrhythmia, high blood

5    pressure and obesity, all support the conclusion that resentencing is appropriate in this case.

6    **B. Mr. House's Recent Injuries Further Merit a Resentencing So He Can Spend the Last**

7    **8 months of his Sentence on Home Confinement While Attending to His Facial**
     **Reconstruction**

8    The real urgency of the undersigned's motion to the Court, however, is Mr. House's current

9    facial trauma.  Mr. House was attacked at MDC LA on May 1, 2020 and was immediately rushed to

10   a public emergency room outside of the BOP medical system.  He was subsequently admitted to the

11   hospital and was not discharged until May 5, 2020.  As this Court undoubtedly knows, hospitals

12   these days are not prone to keeping individuals overnight for much of anything; the fact that this

13   hospital kept Mr. House, a BOP inmate that long readily demonstrates that the instant injury is no

14   small matter.  Nor is it inconsequential that the BOP medical staff itself has made 2 urgent referrals

15   to outpatient orbital and facial reconstruction surgeons as recent as last week.  Mr. House's condition

16   in this regard is not terminal but it is a serious medical issue is only made more complicated by the

17   COVID-19 pandemic.

18   The BOP is trying desperately to prevent inmates from coming into close contact with anyone

19   outside of their facilities.  Visiting has been suspended, as has inmate transport.  Urgent medical

20   issues, however, still require transport, and the BOP is dutifully attending to Mr. House's need for

21   outside medical treatment.  As Mr. House was informed, current policy at MDC LA mandates that

22   inmates who are in Mr. House's position are quarantined for 14 days in isolation following any

23   contact outside the facility.  When the undersigned spoke to Mr. House on May 11, 2020, he was

24   being housed in "the hole" in isolation due to the fact that he had been taken to see the orbital

25   specialist.  Though the BOP undoubtedly does not mean this action against Mr. House as

26   "punishment" but instead as a safety precaution, it is nonetheless extremely uncomfortable to be

27   housed outside his regular unit given the injuries he has suffered.

28

8

1    At this juncture, given all the relevant factors, it is frankly an idiotic waste of BOP staff

2    resources, taxpayer dollars, and an unnecessary risk to both the BOP staff and inmates at MDC LA

3    and Mr. House to continue to incarcerate him for an additional 4 months while transporting him to

4    orbital and facial reconstruction specialists rather than commute his sentence and place him on

5    supervised release with a home confinement component to "replace" the lost prison time.[7]

6    **C. Mr. House has been rehabilitated and will shelter in place at home; the § 3553(a)**
     **factors counsel in favor of resentencing to time served.**

7    In considering Mr. House's request, the Court should consider post-offense developments

8    under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and

9    characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal

10   conduct." *Pepper v. United States,* 562 U.S. 476, 490-93 (2011).

11   *First*, of course, a serious pandemic to which Mr. House is uniquely vulnerable is spreading

12   through California prisons, has made its way into MDC LA, and is decimating nearby BOP facilities

13   such as Lompoc and Terminal Island.  Although the defense appreciates that BOP is taking some

14   precautions to protect inmates, the reality is that prisons are uniquely dangerous environments for

15   people like Mr. House right now.  BOP does not have the resources to humanely isolate vulnerable

16   inmates like Mr. House, nor does it have coronavirus testing kits adequate to monitor the inmates at

17   MDC LA.  Should Mr. House become ill, BOP may not discover it for some time, and he may be

18   delayed in receiving life-saving medical care.  By contrast, at home, Mr. House can shelter in place

19   with his family and arrange his own, private-sector facial reconstruction care.

20   The sentencing statute specifically contemplates "the need for the sentence imposed … to

21   provide the defendant with needed educational or vocational training, medical care, or other

22

23   _____

24   [7] As of September 18, 2020, Mr. House will be eligible for transfer to home confinement or a
     halfway house under the regular course.  *See* Falk Decl., Exhibit C.  At the time of the May 20,

25   2020 hearing, Mr. House will be 4 months away from that course of action which routinely
     occurs for inmates without detainers for the last 10% of their sentences.  Mr. House instead

26   suggests here that the Court resentence him and release him forthwith and modify the terms
     and conditions of his supervision such that he be placed on home confinement for 8 months,

27   until February 10, 2021, which is his statutory "good time" release date and the day the BOP
     would commute his sentence completed absent loss of good time credits.

28

MOTION TO REDUCE SENTENCE
HOUSE, CR 14-196 CRB

correctional treatment in the most effective manner," *see* § 3553(a)(2)(D), and under the circumstances, the defense submits, consideration for Mr. House's health deserves significant weight.

*Second*, and perhaps even more importantly, Mr. House has made good on his promise to the Court at sentencing to rehabilitate himself during his time in custody.  He has participated in significant programming while in custody in order to maintain his sobriety.  He has not had any disciplinary problems that would suggest that he is not doing well.  He even serves as an orderly, barber, and recreational coordinator in his unit.  Again, the sentencing statute supports resentencing given Mr. House's positive record and rehabilitation.  *Id.*

*Third*, Mr. House no longer poses a threat to himself or the community.  Looking forward, he is also likely to be an asset to his community, as he has ambitions of starting a small business and furthering his education.  Finally, he would certainly be an asset to his family if released, as Mr. House's son suffers from significant health problems.

*Fourth*, in terms of just punishment, deterrence, promoting respect for the law, and public safety, several considerations are relevant.  Most importantly, Mr. House has already served a very substantial portion of his statutory custodial sentence— 77.5%.  Falk Decl., Exhibit C.  Second, Mr. House has never been convicted of a violent felony.   Third, the case, though certainly serious, does not involve any particularly troubling, aggravating factors.  As argued at sentencing, Mr. House readily admitted he sold both charged guns to UC-4599, but certainly did not threaten, point, or fire the firearms at anyone.  For three years on pretrial release he wore an ankle monitor and incurred minimal violations of that monitoring program.   Finally, for the foreseeable future Mr. House intends to remain at home sheltering in place with his fiancé.  And of course, the Court retains the authority to modify the conditions of supervised release at any time before the expiration of the probation period, should any changes to the plan be necessary. 18 U.S.C. § 3563(c); Fed. R. Crim. P. 32.1(a).

As the defense explained in its sentencing memoranda, Mr. House is, at heart, a man with strong community ties who deeply loves his children and his community. He has worked hard in prison to better himself and make the best of a difficult situation. He asks that the Court credit that

1   effort, given the current public health crisis and his record of positive reform.

2   **V.  CONCLUSION**

3          For the foregoing reasons, Mr. House respectfully requests that the Court resentence him to

4   time served followed by three years of supervised release.

5

6

7                                                     Respectfully submitted,

8

9          May 12, 2020                              STEVEN G. KALAR
           Date                                      Federal Public Defender
10                                                   Northern District of California

11                                                   _____
                                                                    /S
12                                                   ELIZABETH M. FALK
                                                     Assistant Federal Public Defender
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO REDUCE SENTENCE
HOUSE, CR 14-196 CRB