IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>  v.<br>BARRY HOUSE,<br>  Defendant. | Case No. 14-cr-00196-CRB-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Barry House is an inmate in the custody of the Bureau of Prisons and is currently housed at Metropolitan Detention Center – Los Angeles. See Mot. (dkt. 2188) Ex. 1. House seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that he "is at risk of serious illness or death if he is infected by the coronavirus." Mot. at 1.[1] House asserts that there are extraordinary and compelling reasons for his release, due to his underlying medical conditions: "He is 50-years old and suffers from severe sleep apnea, high blood pressure, anemia, respiratory issues, obesity, hypertension, and heart problems." Id. In addition, at the time of filing his motion, House had recently been injured by another inmate and suffered a facial injury that required emergency surgery. Id. at 4 ("Mr. House now likely needs urgent surgery as a result of these multiple fractures to his eye and face. . . . The surgeries cannot wait . . . thus prompting Mr. House's urgent motion to this Court."). The government opposes House's motion, primarily

---

[1] A defendant may bring a § 3582(c) motion after "the lapse of 30 days from the receipt of [] a request by the warden of the defendant's facility. . . ." 18 U.S.C. § 3582(c)(1)(A). House asserts that he emailed such a request on April 15, 2020. Mot. at 2 (citing House Decl. Ex. 1 ¶ 2). The government concedes that 30 days have passed and that the Court now has jurisdiction to rule on House's motion. See Opp'n (dkt. 2195) at 7 n.2.

because it asserts that (A) House remains a danger to the community, and (B) House's current medical condition is not severe enough to constitute an extraordinary and compelling reason. See generally Opp'n. As explained below, the Court agrees with the government.

### A. Danger to the Community

A reduction in sentence under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see also Dillon v. United States, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission policy statement applicable to 18 U.S.C. § 3582(c)(2) remains mandatory, even after United States v. Booker, 543 U.S. 220 (2005)). The applicable Sentencing Commission policy statement, U.S.S.G. § 1B1.13, directs that a court may only grant compassionate release if it determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Section 3142(g) lays out four factors for determining dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The Court cannot determine with confidence that House is not a danger to the community. The government's opposition brief describes a number of the recordings in House's case, in which House tells the undercover agent that he is the President of the Made Men, that he could provide muscle to protect the undercover's fictitious marijuana grow, that he could get two guns every other week, that he could provide two "goons" to do whatever the undercover wanted, and that damaging a vehicle to send a message to someone was "too easy." Opp'n at 2–6. A co-defendant in this case told the undercover that House was a member of the street gang Black Guerilla Family. Id. at 3. House also sold two guns to the undercover. Id. at 6. "House was a multiple time convicted felon at the time of the transactions," and he "trafficked in firearms believing that the firearms would be used to guard a narcotics operation through violence if necessary." Id. A grand jury charged House with being a felon in possession of firearms, and trafficking in firearms. Opp'n at 2. Following his arrest, the magistrate judge found that defendant was a danger to the community and ordered House detained; on October 21, 2014, this Court released defendant due

to House's son's health condition.  Id.; see also Detention Order (dkt. 559) at 5 ("The bottom line is that the evidence presented at the hearings shows House can combine access to firearms with a willingness to at least threaten violence.  Moreover, the evidence shows that House was on probation at the time of the recordings and firearm transactions, so community supervision was not successful."); Order Granting Motion to Revoke (dkt. 560).

House pled guilty to one count of felon in possession in April 2017.  See Mot. at 4.  While it is true that House demonstrated some real evidence of rehabilitation by the time of his sentencing in January 2018, see id., at 4–5; Tr. of 1/8/18 (dkt. 1993) at 100–101, and seems not to have had any disciplinary problems in custody, Mot. at 5 (citing Falk Decl. Ex. B), the Court remains concerned about recidivism.  House's criminal history is extensive.  See PSR (dkt. 2049) at 29–33 (adding that House's criminal history was six, but because he committed the instant offense while under a criminal justice sentence for Battery, his total criminal history score was eight).  House was on probation at the time of the conduct alleged in this case.  See Detention Order at 4.  And House was convicted in connection with battering and kidnapping a woman shortly before he was arrested on these charges.  See Opp'n at 16, PSR at 31–32.  Given the nature and circumstance of House's crime, the evidence against him, his history and characteristics, and the nature and seriousness of the danger he could pose to the community were he released, House is likely a danger under § 3142(g).

### B.      Extraordinary and Compelling Reasons

In order to reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), a Court must also, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," "find[] that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison.  See, e.g., United States v. Reid, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020); United States v. Robinson, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020).  The Sentencing Commission has defined the term "extraordinary and compelling reasons."  The application notes to U.S.S.G. § 1B1.3 enumerate five circumstances that establish "extraordinary and compelling reasons" to reduce a defendant's sentence, only one of which could apply here: "extraordinary and compelling

3

reasons are met if a defendant has "a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13 cmt. n.1(A)(ii).[2]

House identifies a number of underlying conditions, each of which appears to be under control. By his own account, he takes aspirin and Carvedilol for his irregular heartbeat, takes Lisinopril and Hydrochlorothiazide to control high blood pressure, takes Atorvastatin to control high cholesterol, and uses a CPAP machine to control his sleep apnea. See Mot. at 3. He acknowledges that he does not meet the CDC's definition of obesity. Id. It is not clear that these conditions either individually or collectively put House at significant risk of harm from coronavirus—that they "substantially diminish[]" his ability to provide self-care in custody. While serious heart conditions put people at higher risk, not all heart irregularities are serious heart conditions. See CDC, "People Who Are at Higher Risk for Severe Illness," (listing "People who have serious heart conditions," as being at higher risk), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited 5/19/2020). Although the CDC's guidance states on the one hand that "Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes," see "Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)," updated 5/15/2020, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited 5/19/2020), the CDC also specifically states about

---

[2] House argues that he also qualifies as having extraordinary and compelling reasons because of the catch-all provision: "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." See Mot. at 6–8. Not so. The Director of the Bureau of Prisons has made no determination in House's case. While the Director could recognize that the pandemic—or at least particular vulnerability to COVID-19—is an extraordinary and compelling reason, see U.S.S.G. § 1B1.13 cmt. n.1(D), this has not yet transpired.

hypertension that "Although many patients with severe illness from COVID-19 have underlying hypertension, it is unclear at this time if hypertension is an independent risk factor for severe illness from COVID-19," see CDC, "Clinical Questions About COVID-19: Questions and Answers," updated 5/12/2020, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last visited 5/19/2020).  Indeed, as the government notes, while pulmonary hypertension is a risk factor, House appears to have essential, and not pulmonary, hypertension.  See Opp'n at 6–7; CDC, "Groups at Higher Risk for Severe Illness," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited 5/19/2020) ("Serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension, may put people at higher risk for severe illness from COVID-19.") (emphasis added).

Perhaps most important, the primary basis House gives for his need for compassionate release is his need for emergency facial surgery to address an injury suffered at the hands of another inmate.  He writes that he "now likely needs urgent surgery as a result of these multiple fractures to his eye and face. . . . The surgeries cannot wait . . . thus prompting Mr. House's urgent motion to this Court."  Mot. at 4; see also id. at 8 ("The real urgency of the undersigned's motion to the Court, however, is Mr. House's current facial trauma.").  But House had the required surgery on May 13, 2020.  See Opp'n at 7 (citing Opp'n Ex. A) (adding that, "[a]ccording [to] the medical records, a follow-up examination was even cancelled based on the success of the surgery.").  Although House has since expressed concern about his housing conditions while recovering from surgery, see Second Falk Decl. (dkt. 2194), such conditions do not alter the Court's view on compassionate release.

Because the Court cannot determine that House "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," or that "extraordinary and compelling reasons warrant such a reduction," the motion is denied.

**IT IS SO ORDERED.**

Dated: May 20, 2020



CHARLES R. BREYER
United States District Judge

5